UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

SAMUEL ROOSEVELT JONES,

                Plaintiff,                      Case No. 2:13-cv-363

v.                                     Honorable Robert Holmes Bell

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants MDOC, Lesatz, Eyke, Caron, Russell, Lockhart, Heyns, Samli, Lanala, Truesdale, LaPlante, Mackie, LeClaire, S. Niemi, Jondreau, Burke, Bastian, Cummings, Kutchie and Vertanen. The Court will serve Plaintiff's retaliation claims against Defendants Martti, DeForge, Jurva, Bemis, Beesley, Parrish, Meyers, Niemi, Erikkla and Linder.

## Discussion

I.    Factual allegations

Plaintiff filed his original complaint (docket #1) on December 5, 2013.  On January 9, 2014, he filed a motion to supplement the complaint (docket #4) and on February 5, 2014, before the Court had ruled on his motion to supplement, he filed an amended complaint (docket #6).  On March 19, 2014, Plaintiff filed a second amended complaint (docket #9).  On May 21, 2014, Plaintiff filed a third amended complaint (docket #13).  Shortly thereafter, on May 29, 2014, Plaintiff filed a motion to amend or correct the third amended complaint (docket #16) and four affidavits with exhibits (docket ##18-21), apparently intended to supplement the third amended complaint.  On June 19, 2014, Plaintiff filed two additional affidavits with exhibits (docket ##23-24), also intended to supplement the third amended complaint.  On August 8, 2014, the Court ordered Plaintiff to file an amended complaint on the required form.  *See* W.D. Mich. LCivR 5.6(a).  Plaintiff timely complied with the Court's order and filed the instant amended complaint (docket #28).

Plaintiff presently is on parole, however the events about which he complains took place while he was incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) and the Marquette Branch Prison (MBP).   Plaintiff names the following Defendants: MDOC; MDOC Director Daniel Heyns; ADW Housing Daniel Lesatz; Chief Psych Paul Eyke; Nurse Mandi Salmi; Qualified Medical Health Professionals (QMHP) Anne Lanala and Tonya Wolak Truesdale; Grievance Coordinators Glenn Caron and Tom LaPlante; Acting Warden Thomas P. Mackie; Grievance Managers Richard D. Russell and Sean Lockhart; Assistant Resident Unit Supervisors (ARUS) Nathan Leclaire and John Burke; Resident Unit Managers (RUM) S. Niemi (S. Niemi) and William Jondreau; Correctional Officers (Unknown)

2

Martti, Rudy Parrish, Todd Bastian, J. Niemi (Niemi), J. Linder, T. Meyers, (Unknown) Kutchie, (Unknown) Vertanen, R. Bemis, Lee Jurva and Walter DeForge;[1] Sergeant (Unknown) Cummings; N. Beesley; and K. Erkkila.

Plaintiff's complaint reads like a daily diary. It covers nearly three years of alleged misconduct set forth in 76 paragraphs of factual allegations against 30 defendants. To the extent Plaintiff sets forth allegations that do not pertain to any of the Defendants identified herein, they are not included here unless relevant. Moreover, to the extent Plaintiff alleges that he filed grievances against unidentified MDOC employees that were either ignored or denied or that an unidentified grievance coordinator denied or failed to respond to his requests to obtain grievance forms, these allegations are not set forth here unless relevant. Plaintiff divides his allegations into two separate claims.

With respect to Claim I, Plaintiff alleges the following facts. On March 21, 2012, Plaintiff filed a grievance seeking to be evaluated by a QMHP instead of Defendant Salmi, who Plaintiff alleges is not a QMHP. Plaintiff's grievance was denied.

On May 13, 2012, Plaintiff filed a grievance regarding his request to Defendant Salmi "to deter MBP correctional officers from [inflicting] mental [health] injuries due to retaliation." (Am. Compl., docket #28, Page ID#259.) His grievance was denied.

---

[1] In the text of his complaint, Plaintiff identifies additional MDOC personnel as defendants, however only those persons identified as defendants in Section B of the form complaint are considered defendants in this action, with one exception. In his original complaint, Plaintiff identified Correctional Officer Walter DeForge as a defendant; however, Deforge is not identified as a defendant in Section B of the form complaint. Because Plaintiff originally identified DeForge as a defendant and apparently wished to do so here, the Court will consider DeForge to be a named defendant.

On June 11, 2013, Plaintiff asked Defendant Marti and another officer who is not a defendant, to write a "reprimand ROBERTAR[2] in the C.O. staff log book so [Plaintiff] can talk to a QMHP" about his mental health issues later that week.  (*Id.*)  Plaintiff's request was denied.  On June 19, 2013, Plaintiff spoke with Defendant Lanala and explained that he needed a psychiatric evaluation in a confidential setting.  His request was denied.  Thereafter, Plaintiff made written and verbal requests for a mental health evaluation.  On June 26, 2013, Plaintiff sent numerous Step III grievances seeking undisclosed remedies to "MDOC[ ] Director['s] office - Daniel Heyns."  (*Id.* at Page ID#260.)  He did not receive any responses.  On June 27, 2013, Defendant Lanala gave Plaintiff a mental health evaluation.  Plaintiff alleges that Defendant Lanala did not give him a proper evaluation and told him to "re-kite so Tonya Wolak Truesdale can handle the issue [and] that she is aware of your issue."  (*Id.*)

On November 5, 2013 and numerous times thereafter, Plaintiff kited health care to obtain a weight check because "he noticed a tremendous weight loss due to retaliation, stress and paranoia.'  (*Id.*)  He did not receive a response.

On December 28, 2013, Plaintiff was transferred to AMF's Administrative Management Facility.

On February 11, 2014, Plaintiff saw Defendant Truesdale for a mental health evaluation.  Plaintiff complained to her that he is paranoid due to the retaliatory actions of correctional staff.  Plaintiff was not satisfied with Defendant Truesdale's evaluation and attempted to file a grievance with the AMF grievance coordinator.

---

[2]Plaintiff does not explain what he means by a "R.O.B.E.R.T.A.R."  (Am Compl., docket #28, Page ID#259.)  Presumably, Plaintiff means the "psychiatric referral form, called a 'Roberta-R' (which stands for reasoning, orientation, behavior, emotions, recall-and-memory, talk, appearance and relationships)."  *Clark-Murphy v. Foreback*, 439 F.3d 280, 283 (6th Cir. 2006).  In context, it appears that Plaintiff means referral and not "reprimand."

With respect to Claim II, Plaintiff alleges the following facts.  On March 5, 2013, after Plaintiff had been released from segregation, Defendant Parrish told Plaintiff he will not be in general population long because of his grievance writing.

On April 8, 2013, Plaintiff was unable to identify a correctional officer who was harassing him because the officer was in violation of MDOC dress code.  Plaintiff later learned from another inmate that the officer was Defendant Martti.

On May 13, 2013, Plaintiff learned from a correctional officer that Defendant Beesley wanted to place Plaintiff in segregation because Plaintiff asked Defendant Beesley not to verbally disrespect him.  On May 22, 2013, Plaintiff's grievance was denied by Defendants LeClaire and S. Niemi "who failed to provide a remedy and/or resolution to deter their staff from future retaliation in H[ousing] U[nit] 6."  (*Id.* at Page ID#261.)  On May 23, 2013, Plaintiff saw Defendant LeClaire to discuss his parole plan and earliest release information.  On May 24, 2013, Defendant Martti delivered to Plaintiff a copy of his parole interview.  Defendant Martti was aware of Plaintiff's parole interview scheduled for July 15, 2013.

On June 5, 2013, Defendant Beesley and Housing Unit 6 staff opened Plaintiff's incoming mail after it was inspected by the mailroom.  On June 11, 2013, Plaintiff asked Defendant Martti to prepare a ROBERTAR so that Plaintiff could speak to a QMHP about his mental health issues. Plaintiff's request was denied.  That same day Defendant Martti advised Plaintiff that he could only receive mental health assistance if Defendant Martti placed him on suicide watch or falsified a misconduct against Plaintiff because Plaintiff would not stop talking to himself. Defendant Martti ultimately falsified a misconduct report against Plaintiff in retaliation for Plaintiff writing grievances. Plaintiff was placed in segregation and exposed to an unidentified chemical agent.

5

On June 19, 2013, Plaintiff requested a grievance form from Defendant LaPlante because Defendant Mackie had authorized AMF personnel to place Plaintiff on modified access. On June 23, 2013, Plaintiff requested a grievance form from the grievance coordinator regarding Defendants Cummings, DeForge and Bastian's failure to notify health services that Plaintiff was threatened by "all staff" that he would be placed in restraints for kicking the door for medical and mental health help. (*Id.* at Page ID#263.) On June 24, 2013, Plaintiff requested 3 Step II grievance forms from Defendant LaPlante because he was on modified access. Plaintiff alleges that the grievances related to retaliation and "AMF caused delay in order to not resolve those issues." (*Id.*)

On July 1, 2013, Defendant DeForge retaliated against Plaintiff with a falsified misconduct report as a result of Plaintiff writing a grievance against him on June 23, 2013.

From July 17, 2013 through August 19, 2013, Plaintiff requested grievance forms while on modified access. Defendant LaPlante "failed to forward those requests." (*Id.* at Page ID# 263.)

On August 19, 2013 and again on September 11, 2013, Defendant Jurva refused to allow Plaintiff to shower in retaliation for Plaintiff's grievances writing.

On September 19, 2013, Plaintiff filed a grievance against Defendants Mackie and LaPlante for failing to forward Plaintiff's grievances as requested while Plaintiff was on modified access.  Plaintiff's grievance was denied.

On October 25, 2013, Plaintiff filed a grievance against Defendant Bemis for "obstructing incoming institutional mail." (*Id.* at Page ID#264.)

6

On November 26, 2013, Plaintiff filed a grievance "due to AMF supervisory staff failure to take security precautions with [sic] [Defendant] Jurva['s] retaliation toward [Plaintiff]." (*Id*.)  Plaintiff's grievance was denied.

On December 2, 2013 Defendants Bemis and Jurva refused to allow Plaintiff to shower in retaliation for Plaintiff's grievance writing.  Plaintiff's grievance was denied.  Thereafter, on December 5, 2013, Defendant Jurva refused to allow Plaintiff to clean his cell in retaliation for Plaintiff's grievance writing.  On December 10, 2013, Plaintiff filed a grievance because AMF administration refused to report numerous violations of employee work rules. Plaintiff's grievance was denied.  That same day, Defendant Burke "authorized that [P]laintiff be placed in a detention cell with no working power outlet.  Where these cells are designed for prisoners on detention with restraint hooks on the floors and bedframes.  In fact [Plaintiff ] was not on detention."  (*Id.*)

On several occasions in December, 2013 and January, 2014, Defendant Beesley refused to give Plaintiff his meal tray in retaliation for Plaintiff's grievance writing.

On January 10, 2014, Plaintiff mailed 19 Step III grievances to the MDOC Director's office.  On January 27, 2014, Plaintiff filed a grievance "due to [Defendant] Niemi delaying numerous of [Plaintiff's] non-pork religious meals in order to tamper with [Plaintiff's] food. [Plaintiff's] meals do not arrive with the majority at AMF."  (*Id.* at Page ID#265.)  Plaintiff's grievance was denied.

On February 1, 2014, Defendant Meyers refused to allow Plaintiff to shower in retaliation for Plaintiff's grievance writing against his co-workers.  Plaintiff filed a grievance against Defendant Meyers, which was denied.  On February 7, 2014, Plaintiff gave Defendant Meyers an envelope containing a grievance form addressed to the grievance coordinator.  The grievance related

to Defendant Burke's failure to deter his staff from retaliating against Plaintiff.  Plaintiff's grievance was not processed by the grievance coordinator.  Thereafter, on February 10, 2014, Plaintiff  gave Defendants Niemi, Kutchie and Vertanen envelopes containing grievances. The grievances were not processed by the grievance coordinator.

On February 12, 2014, Defendant Niemi refused to allow Plaintiff to shower in retaliation for Plaintiff writing grievances against him.  Later that day, Defendant Niemi informed Plaintiff that the law library refused his request for a law book.  Plaintiff filed a grievance, but it was not processed.  Additionally, on February 16, 2014, Defendant Niemi turned Plaintiff's water off in retaliation for Plaintiff writing grievances against him.  Plaintiff alleges that "Housing Unit 1 staff d[id] not have a penological justification [for] deny[ing] [Plaintiff access to] drinking water because the maintenance closet was leaking." (*Id.* at Page ID#266.)  Plaintiff filed a grievance, which was not processed.  Finally, on February 17, 2014, Defendants Niemi and Linder fabricated a threatening behavior misconduct in order to justify refusing to allow Plaintiff to shower.  Later that day both Defendants refused to give Plaintiff his dinner meal tray.

On February 18, 2014 Plaintiff asked Defendant Burke why AMF administration had not stopped Housing Unit 1 staff from "unlawful reoccurrences."  Defendant Burke responded to Plaintiff that he "still [has] time to fuck up." (*Id.* at Page ID#267.)  On February 19, 2014, Plaintiff rewrote all his grievances against Defendants Niemi, Meyers and Vertanen regarding the obstruction of his mail and against AMF administration for failing to deter "unlawful reoccurrences." (*Id.*)  Plaintiff then mailed all grievances to the grievance coordinator.  Due to Housing Unit 1 staff mail obstruction, only 2 of the 6 issues Plaintiff raised in his grievances was resolved.

8

On March 1, 2014, Defendant Meyers used another correctional officer as a "retaliatory tool" to harass Plaintiff and write a fabricated misconduct. (*Id.*) On March 2, 2014, Defendant Jondreau threatened to take all of Plaintiff's legal material in retaliation for Plaintiff writing a grievance against him on February 19, 2014. Defendant Jondreau justified his actions "due to Plaintiff having active legal documents on the wall." (*Id.*) On March 7, 2014, Plaintiff filed a grievance against AMF administration related to Defendant Jondreau's threatening to obstruct Plaintiff's legal mail. Plaintiff's grievance was not processed. On March 9, 2014, Plaintiff filed a grievance against Defendant LaPlante because he stopped processing Plaintiff's grievances. On March 23, 2014, Defendant Niemi "shook down" Plaintiff's cell and threw all of his legal documents all over the cell. (*Id.* at Page ID#268.)

On April 15, 2014, Defendant Niemi and Housing Unit 1 Staff refused to give Plaintiff a haircut. On April 18, 2014, Plaintiff mailed a "notice of complaint" to the MDOC Director's office notifying CFA Director Michael Curley of issues at AMF.

On May 5, 2014, Defendant Niemi refused to give Plaintiff law books. On May 17, 2014, Defendant Erikkla turned off Plaintiff's water in retaliation and without any penological justification. On May 18, 2014, Plaintiff placed an expedited legal mail form in his cell door. Defendant Parrish removed the legal document without authorization "to mail or throw in the trash." (*Id.* at Page ID#269.) On May 20, 2014, Defendant Bemis refused to allow Plaintiff to get a haircut in retaliation for grievances written against his co-worker Defendant Niemi. On May 24, 2014, Defendant Niemi refused to allow Plaintiff to shower in retaliation for writing grievances against Defendant Niemi. On May 28, 2014, Defendant Niemi refused to allow Plaintiff to shower and refused to give Plaintiff his meal tray.

Plaintiff alleges that Defendants' actions violated his First Amendment rights by retaliating against him as a result of his grievances writing and his Eighth Amendment rights by denying Plaintiff an appropriate mental health evaluation and proper treatment.   Additionally, Plaintiff alleges that Defendants denied Plaintiff access to the court by denying or failing to process his grievances.

As relief, Plaintiff seeks monetary damages and injunctive relief.

II.    Immunity

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).   Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).   In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).   In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).   Therefore, the Court dismisses the Michigan Department of Corrections.

III.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

11

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      Lesatz, Eyke, Caron, Russell and Lockhart

Plaintiff did not make any specific factual allegations against Defendants Lesatz, Eyke, Caron, Russell and Lockhart in the body of his complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants Lesatz, Eyke, Caron, Russell and Lockhart.

12

B.      Defendant Heyns

Plaintiff mentions Defendant Heyns in the body of his complaint only once. However, the Court will assume that in referencing the MDOC Director's office, Plaintiff intended to identify Defendant Heyns. As such, Plaintiff alleges that on June 26, 2013, he sent numerous Step III grievances seeking undisclosed remedies to Defendant Heyns, but received no response. Additionally, on January 10, 2014, Plaintiff mailed 19 Step III grievances to the MDOC Director's office and on April 18, 2014, Plaintiff mailed a Notice of Complaint to the MDOC Director's office notifying CFA Director Michael Curley of issues at AMF. Although neither of these allegations specifies any actionable conduct, presumably Plaintiff intends to complain that the MDOC Director's office did not follow up on his grievances or Notice of Complaint. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Heyns engaged

in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Heyns.

### C.   Defendant Salmi

Plaintiff alleges that on March 21, 2012, Plaintiff filed a grievance seeking to be evaluated by a QMHP instead of Defendant Salmi, who Plaintiff alleges is not a QMHP, and that his grievance was denied. Additionally, Plaintiff alleges that he filed a grievance regarding his request to Defendant Salmi to deter MBP correctional officers from retaliating against him which was causing him in suffer mental health injuries, and that grievance was also denied. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). In the absence of any allegations of actionable conduct by Defendant Salmi, Plaintiff fails to state a claim against her.

### D.   Eighth Amendment

Plaintiff claims that his rights under the Eighth Amendment were violated because he did not receive a proper mental health evaluation or treatment. In support of this claim Plaintiff

alleges that on June 11, 2013, he asked Defendant Martti to write a referral "ROBERTAR in the C.O. staff log book so [Plaintiff] can talk to a QMHP" about his mental health issues later that week, but his request was denied.  (Am. Compl., docket #28, Page ID#259.)  On June 19, 2013, Plaintiff spoke with Defendant Lanala and explained that he needed a psychiatric evaluation in a confidential setting, but she denied his request.  Thereafter, on June 27, 2013, Defendant Lanala gave Plaintiff a mental health evaluation, but Plaintiff alleges that she did not give him a proper evaluation.  Instead, Defendant Lanala told Plaintiff to kite Defendant Truesdale so she "can handle the issue [and] that she is aware of your issue."  (*Id.* at Page ID#260.)  On February 11, 2014, Plaintiff saw Defendant Truesdale for a mental health evaluation.  Plaintiff complained to her that he is paranoid due to the retaliatory actions of correctional staff.  Plaintiff was not satisfied with Defendant Truesdale's evaluation and attempted to file a grievance with the AMF grievance coordinator.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  Likewise, the Eighth Amendment requires prison officials to provide medically necessary mental health treatment to inmates.  *See id.* at 103 (1976); *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Estelle*, 429 U.S. at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under

16

the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell v. Hininger*, No. 13-5315, slip op. at 4-5 (6th Cir. Apr. 4, 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

17

Plaintiff's allegations against Defendants Martti, Lanala and Truesdale fail to state an Eighth Amendment violation.  With respect to Defendant Martti, Plaintiff fails to sufficiently allege that Defendant Martti deprived him of adequate medical care.  Plaintiff sought a mental health referral from Defendant Martti so that he could "talk to a QMHP about his mental health issue later that week."  (Am. Compl., docket #28, Page ID#259.)  However, Plaintiff did not need such a referral to access mental health services.  MDOC Policy Directive (PD) 04.06.180 ¶ N, provides that "[a] prisoner may request mental health services through BHCS."[3] *See also* MDOC PD 03.04.100 ¶ BB(2).  Defendant Martti's failure to refer Plaintiff for mental health services did not deprive Plaintiff of adequate medical care because Plaintiff could have accessed mental health services without a referral.

MDOC PD 04.06.180 provides that a referral may be made by non-health care staff "who suspect that a prisoner may be in need of mental health services."  *Id.* at ¶ N; *see also* MDOC PD 03.04.100 ¶ BB(3).  Thus, while it appears that Defendant Martti did not "suspect" that Plaintiff was in need of mental health services and, therefore, declined to make a referral, Plaintiff was entirely free to request mental health services through the BHCS.  In this instance, where Plaintiff could access mental health services on his own, Defendant Martti could not have violated Plaintiff's Eighth Amendment rights because he did not deprive Plaintiff of access to those services.

With respect to Defendants Lanala and Truesdale, Plaintiff alleges that on June 19, 2013, Defendant Lanala denied his request for a psychiatric evaluation.  However, shortly thereafter, on June 27, Defendant Lanala gave Plaintiff a mental health evaluation, although Plaintiff contends that the mental health evaluation was inadequate.  Additionally, on February 11, 2014, Plaintiff saw

_____

[3] BHCS is the Bureau of Health Care Services.  *See* MDOC PD 03.04.100¶ E; *see also* PD 04.06.180 ¶E.

Defendant Truesdale for a mental health evaluation.  As wth Defendant Lanala's mental health evaluation, Plaintiff was not satisfied with Defendant Truesdale's evaluation.

Plaintiff's allegations fail to state an Eighth Amendment claim against Defendants Lanala and Truesdale.  First, although Plaintiff alleges that Defendant Lanala denied his request for a psychiatric evaluation on June 19, 2013, he also alleges that just over a week after he made his request, on June 27, 2013, Defendant Lanala gave Plaintiff a mental health evaluation.  Second, Plaintiff fails to set forth any allegations suggesting that Defendants Lanala or Truesdale were deliberately indifferent to a substantial risk of serious harm to Plaintiff.  Indeed, in response to Plaintiff's requests, both Lanala and Truesdale provided mental health evaluations.  While Plaintiff believes the evaluations were inadequate, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995).  Consequently, Plaintiff fails to state an Eighth Amendment claim against Defendants Lanala and Truesdale.

E.      Defendant LaPlante

Plaintiff alleges generally that Defendants' actions denied him access to the court through an appropriate grievances process.  Plaintiff seems to be claiming that because the grievance procedure at AMF was inadequate or because his grievances were not processed, he was denied his right to access the courts.  Plaintiff does not specify which Defendants he believes to be responsible for this harm.  However, as best as can be understood, Plaintiff seems to blame Defendant LaPlante

19

for failing to process his grievances.[4]  On June 19, 2013, Plaintiff requested a grievance form from Defendant LaPlante because Warden Mackie had authorized AMF personnel to place Plaintiff on modified access.  Presumably, Defendant LaPlante did not provide Plaintiff with the requested grievance form.  On June 24, 2013, Plaintiff requested 3 Step II grievance forms from Defendant LaPlante because he was on modified access.  Again, it must be presumed that Defendant LaPlante ignored or denied Plaintiff's request.  Plaintiff alleges that from July 17, 2013 through August 19, 2013, Plaintiff requested grievance forms while on modified access, but Defendant LaPlante failed to give him any forms.  On September 19, 2013, Plaintiff filed a grievance against Defendant Mackie and LaPlante for failing to forward Plaintiff's grievances while Plaintiff was on modified access, however, Plaintiff's grievance was denied.  On March 9, 2014, Plaintiff filed a grievance against Defendant LaPlante because he stopped processing Plaintiff's grievances.

Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405,

---

[4]Plaintiff frequently states that the grievance coordinator failed to process his grievances.  Because Plaintiff named as defendants two grievance coordinators--Caron and LaPlante--in their personal capacities, the Court cannot presume which defendant Plaintiff intended to identify in his allegations.  Thus, to the extent Plaintiff's allegations complain about inaction by the grievance coordinator without naming an individual, those allegations must be disregarded.

407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not

deprive him of due process.

    Moreover, even if Defendant LaPlante refused to process Plaintiff's grievances,

Plaintiff's access to the courts was not impaired.  "If a prisoner has been placed on modified access

to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious,

he has exhausted his 'available' administrative remedies as required by § 1997e(a)." *Kennedy v.*

*Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).  Moreover, even if Pllaintiff had been improperly

prevented from filing a grievance, his right of access to the courts to petition for redress of his

grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional

grievances. *See, e.g., Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-24

(1977).  The exhaustion requirement only mandates exhaustion of available administrative remedies.

*See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the

process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of

a civil rights action.  *See Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 446-47 (6th Cir. 2005)

("[I]f a grievance officer dismissed a non-frivolous complaint by [Plaintiff], that would be the end

of possible administrative remedies with regard to that grievance, and a court would thus have

jurisdiction to hear a related federal claim, since all possible administrative remedies would have

been attempted.").  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable

claim against Defendant LaPlante.

F.      Defendant Mackie

Plaintiff alleges that on June 19, 2013, he requested a grievance form from Defendant LaPlante because Defendant Mackie had authorized AMF personnel to place Plaintiff on modified access. Additionally, Plaintiff alleges that on September 19, 2013, he filed a grievance against Defendants Mackie and LaPlante for failing to forward Plaintiff's grievances as requested while Plaintiff was on modified access. Plaintiff appears to claim that Defendant Mackie violated some unspecified constitutional right when he placed Plaintiff on modified access and then failed to forward Plaintiff's grievances while Plaintiff was on modified access.

Under MDOC policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language . . . or [are] unfounded . . . ." MDOC PD 03.02.130 ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.* at ¶ KK. Thus, to the extent Plaintiff intends to claim that Defendant Mackie wrongfully placed him on modified access, such a claim implicates state law only and is not redressable under § 1983. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id*.  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

To the extent Plaintiff claims that by placing him on modified access, Defendant Mackie violated his due process rights or violated his right to access the courts, Plaintiff fails to state a claim.  As noted above, where a prisoner on modified access "attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his 'available' administrative remedies as required by § 1997e(a)." *Kennedy v. Tallio,* 20 F. App'x at 470.  Additionally, Plaintiff has no constitutionally protected due process right to file a prison grievance. *See Walker,* 128 F. App'x at 445.  In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant Mackie.

G.     Defendants LeClaire and S. Niemi

Plaintiff alleges that on May 22, 2013, his grievance was denied by Defendants LeClaire and S. Niemi "who failed to provide a remedy and/or resolution to deter their staff from future retaliation in H[ousing] U[nit] 6." (Am. Compl., docket #28, Page ID#261.)  Additionally, on May 23, 2013, Plaintiff saw Defendant LeClaire to discuss his parole plan and earliest release information.  Plaintiff's allegations fail to state a claim for relief against Defendants LeClaire and S. Niemi.

To the extent Plaintiff claims that Defendants LeClaire and S. Niemi violated his constitutional rights by denying his grievance, as noted above, Plaintiff has no due process right to file a grievance.  *See Walker,* 128 F. App'x at 445.  Additionally, to the extent Plaintiff claims that Defendants LeClaire and S. Niemi are liable for the conduct of those they supervise, Plaintiff fails to state a claim.  As noted above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.  Finally, Plaintiff's allegation that Defendant LeClaire met with him to discuss his parole plan and earliest release information raises no constitutional concerns.

H.     Retaliation

Plaintiff alleges that on March 2, 2014 Defendant Jondreau threatened to take all of Plaintiff's legal material in retaliation for Plaintiff writing a grievance against him on February 19, 2014.  Defendant Jondreau justified his actions "due to Plaintiff having active legal documents on the wall." (*Id.*)  On March 7, 2014, Plaintiff filed a grievance against AMF administration related to Defendant Jondreau's threatening to obstruct Plaintiff's legal mail.  Plaintiff's grievance was not processed.

24

As noted above, to state a retaliation claim Plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith*, 250 F.3d at 1037.

Plaintiff has not alleged that Defendant Jondreau engaged in any adverse action against Plaintiff.  A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results).  However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.  In light of Plaintiff's explanation that he had active legal documents on the wall, Defendant Jondreau's threatening to take Plaintiff's legal material does not rise to the level of a constitutional violation.  Absent any allegations of adverse action, Plaintiff fails to state a claim against Defendant Jondreau.

As set forth in great detail above, Plaintiff alleges that Defendants Martti, DeForge, Jurva, Bemis, Beesley, Parrish, Meyers, Niemi, Erikkla and Linder retaliated against him in a variety of ways as a result of his grievance writing.  At this juncture, Plaintiff's allegations warrant service of the complaint against Defendants Martti, DeForge, Jurva, Bemis, Beesley, Parrish, Meyers, Niemi, Erikkla and Linder.

I.     Defendants Bastian and Cummings

Plaintiff alleges that Defendants Cummings and Bastian's failed to notify health services that he was threatened by "all staff" that he would be placed in restraints for kicking the door for medical and mental health help.  (Compl., docket #1, Page ID#263.)  Plaintiff's claim against Defendants Cummings and Bastian merits little discussion.  Plaintiff's allegation makes two things clear: (1) Plaintiff was kicking his cell door, and (2) staff told him if he did not stop kicking his cell door he would be placed in restraints.  Under these circumstances, where Plaintiff himself asserts the penological justification for using restraints, had Plaintiff actually been placed in restraints, such action, without more, would be insufficient to support an Eighth Amendment claim. *See Kennedy v. Doyle*, 37 F.App'x 755, 757 (6th Cir. 2002)  (recognizing that the improper use of restraints can sometimes violate the Eight Amendment, but explaining that physical restraints are constitutionally permissible where there is a penological justification for their use.)  Thus, the entirely attenuated claim that Defendants Cummings and Bastian violated Plaintiff's Eighth Amendment rights by allegedly failing to notify health services that Plaintiff was being threatened with restraints is, likewise, insufficient to support an Eighth Amendment claim.

J.     Defendant Burke

Plaintiff alleges that on December 10, 2013, Defendant Burke "authorized that [P]laintiff be placed in a detention cell with no working power outlet.  Where these cells are designed for prisoners on detention with restraint hooks on the floors and bedframes.  In fact [Plaintiff] was not on detention."  (Am. Compl., docket #28, Page ID#264.)  On February 18, 2014 Plaintiff asked Defendant Burke why AMF administration had not stopped Housing Unit 1 staff from

"unlawful reoccurrences."  Defendant Burke responded to Plaintiff that he "still [has] time to fuck up."  (Am Compl., docket #28, Page ID#267.)

The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-103(1976).  To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.*  Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999).  Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  As a result, Plaintiff fails to state an Eighth Amendment claim against Defendant Burke.

K.    Defendants Kutchie and Vertanent

Plaintiff fails to state a claim against Defendants Kutchie and Vertanen. Plaintiff alleges that on February 10, 2014, Plaintiff gave Defendants Kutchie and Vertanen envelopes containing grievances. The grievances were not processed by the grievance coordinator. Additionally, Plaintiff alleges that on February 19, 2014, Plaintiff rewrote all his grievances against Defendant Vertanen regarding the obstruction of his mail and against AMF administration for failing to deter "unlawful reoccurrences." (*Id.*) Plaintiff then mailed all grievances to the grievance coordinator. Due to Housing Unit 1 staff mail obstruction, only 2 of the 6 issues Plaintiff raised in his grievances was resolved.

Plaintiff does not allege that Defendants Kutchie or Vertanen did anything untoward with the grievances. Rather, he objects to the fact that the grievance coordinator did not process them. Whether the grievance coordinator processed Plaintiff's grievances or not, is not within the control of Defendants Kutchie or Vertanen. Plaintiff's allegation suggests that the grievance coordinator did not process Plaintiff's grievances because Plaintiff was on modified access and not because Defendants Kutchie or Vertanen did anything with the grievances.

Moreover, even if Defendants Kutchie and Vertanen interfered with Plaintiff's grievances, as explained above, Plaintiff has no due process right to file a prison grievance, *see Walker*, 128 F.App'x at 445, nor does the interference with Plaintiff's grievances deny Plaintiff access to the courts, *see Kennedy*, 20 F.App'x at 470.

28

**<u>Conclusion</u>**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC, Lesatz, Eyke, Caron, Russell, Lockhart, Heyns, Samli, Lanala, Truesdale, LaPlante, Mackie, LeClaire, S. Niemi, Jondreau, Burke, Bastian, Cummings, Kutchie and Vertanen will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve Plaintiff's retaliation claims against Defendants Martti, DeForge, Jurva, Bemis, Beesley, Parrish, Meyers, Niemi, Erikkla and Linder.

An Order consistent with this Opinion will be entered.


Dated: <u>October 30, 2014</u>                    <u>/s/ Robert Holmes Bell</u>
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE